United States District Court
Southern District of Texas
**ENTERED**
July 03, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Mario Valdez, | § § § | |
| *Plaintiff,* | § § § | Civil Action No. 4:23-cv-00393 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security Administration,[1] | § § § § § | |
| *Defendant.* | § § | |

# MEMORANDUM AND ORDER

This is an appeal from an administrative ruling denying disability benefits. Upon consent of the parties, Dkt. 4, 8, the case was transferred to the undersigned judge. Dkt. 10. After carefully considering the parties' cross-motions for summary judgment, Dkt. 11, 12, the administrative record, Dkt. 3, and the applicable law, the Court grants Defendant Kilolo Kijakazi's motion for summary judgment (Dkt. 12) and denies Plaintiff Mario Valdez's motion for summary judgment (Dkt. 11).

---

[1] Although Martin O'Malley became the Commissioner of Social Security Administration on December 20, 2023, no request to substitute him as Defendant has been filed.

## Background

On May 30, 2014, Valdez was working in construction when he was struck by a truck and dragged under it for about fifteen yards, seriously injuring his right hip, right pelvis, spine, right spinal disc, ribcage, and left ankle. R.68-69. He required extensive hospitalization, surgeries, and physical therapy. R.70. Though Valdez eventually returned to work at a donut shop, he could not sustain the physical demands of that job. R.72-75.

Valdez filed for social security benefits on July 13, 2020, claiming a disability onset date of January 5, 2020. R.162 (2D). His asserted injuries largely relate to complications from the 2014 accident. *See* R.87 (claiming "back injury; Left ankle injury; right hip injury; right pelvic injury; arthritis; Left ankle nerve damage").

The Commissioner denied Valdez's application for benefits, both initially and upon reconsideration. R.98-99 (2A, 3A); R.108-11 (2B). Valdez then obtained a hearing before an administrative law judge ("ALJ"). R.38-42. After the hearing, the ALJ issued a decision determining that Valdez is not disabled. R.19-30.

The ALJ first concluded that Valdez met the insured status requirements and had not engaged in substantial gainful activity since the alleged onset date. R.24. Although the ALJ found that Valdez had severe impairments—fracture of the lower limbs, status post reconstructive surgery

of weight bearing joints and obesity—he concluded that Valdez's conditions did not meet or medically equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. R.24-25.

The ALJ then formulated the residual functional capacity ("RFC"), finding that Valdez can:

> perform sedentary work as defined in 20 CFR 404.1567(a) except: The claimant can stand/walk for two hours and sit for six hours of an eight-hour workday. The claimant can lift and carry ten pounds occasionally. The claimant requires use of a cane for ambulation. The claimant can occasionally climb ramps and stairs and occasionally balance, stoop and crouch. The claimant cannot climb ropes, ladders or scaffolds. The claimant cannot kneel or crawl. The claimant is limited to no foot pedal operations with the left foot.

R.25. Relying on this RFC and testimony from a vocational expert (VE), the ALJ concluded that Valdez was unable to perform his past relevant work. R.28. But the VE testified that an individual with Valdez's age, education, work experience, and RFC could perform a number of jobs in the national economy. *See* R.78-81. Based on five of those identified positions—small products assembler, electrical accessories assembler, small products assembler II, addressor, and document preparer—the ALJ concluded that Valdez was not disabled. R.29-30.

In reaching this determination, the ALJ deemed "mostly persuasive" the medical opinions of state agency consultants Drs. Dennis Pacl and Patty Rowley. R.27. But the ALJ found consultative examiner Dr. Verne Leroy

Willits's opinion "unpersuasive," alleging that it was self-contradictory and inconsistent with other medical evidence. R.27-28.

Valdez unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, R.1-3; R.155-56 (11B), which rendered the decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). This appeal followed. Dkt. 1.

## **Legal Standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492,

496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process

5

stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. Substantial evidence supports the RFC limitations.

Valdez challenges the ALJ's determination on the sole ground that the RFC is not supported by substantial evidence. *See* Dkt. 11. Before step four in the disability evaluation process, an ALJ must determine a claimant's RFC—the "most the claimant can still do despite his physical and mental limitations." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). When forming the RFC, "an ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities" and examine all medical evidence in the record. *Beck v. Barnhart*, 205 F. App'x 207, 213 (5th Cir. 2006) (per curiam); *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record"). But "[t]he ALJ is not required to incorporate limitations in the RFC that [he] did not find to be supported by the record." *Lyles v. Kijakazi*, 2023 WL 6279903, at *7 (S.D. Tex. Sept. 26, 2023) (internal quotation marks omitted).

6

Here, the ALJ found that Valdez was capable of "sedentary work" as defined in 20 CFR § 404.1567(a), could "lift and carry ten pounds occasionally," and "occasionally balance, stoop, and crouch." R.25. In making this determination, the ALJ considered the medical opinions of state agency consultants Drs. Dennis Pacl and Patty Rowley, which the ALJ found mostly persuasive. R.27. But the ALJ found unpersuasive the opinion of consultative examiner Dr. Verne Leroy Willits. R.27-28.

Valdez argues that the ALJ's improper analysis of those medical opinions cannot support the RFC determination. *See* Dkt. 11 at 7-10. The Commissioner responds that the ALJ properly considered the opinions, and that substantial evidence supports the ALJ's decision. *See* Dkt. 12-1 at 5-12. As detailed below, the Court agrees that the ALJ erred when analyzing Dr. Willits's opinion, but the error is not prejudicial because the RFC is based on substantial evidence.

### A. The ALJ misconstrued Dr. Willits's medical opinion.

The ALJ determined that Dr. Willits's opinion was unpersuasive because it was not supported by Dr. Willits's own notes, and it was inconsistent with the state agency consultants' opinions and other evidence. *See* R.27.

An ALJ must determine whether a given physician's opinion is persuasive. "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the

7

patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency. *Id.* (citing § 404.1520(c)(b)(2)). "[T]he ALJ is required to explain how he considered the supportability and consistency factors …." *Id.* (internal quotation marks omitted). Here, the ALJ's explanation about the supportability and consistency of Dr. Willits's findings is flawed.

Regarding supportability, the Commissioner embraces the ALJ's finding that Dr. Willits's opinion is self-contradictory because the functional capacity assessment is "unsupported by the findings documented by his own notes." *See* R.27; Dkt. 12-1 at 7. But the ALJ's explanation mischaracterizes the underlying information.

The ALJ inaccurately portrayed the contents of Dr. Willits's medical notes by claiming they "include only mild to moderate limitation of the right hip and lumbar spine." *See* R.27 (citing R.526 (5F)). While these notes did find a "mild limitation of motion particularly of inversion of the right hip," they identified a more substantial "limitation of motion of [Valdez's] LS spine." *See* R.526, 530. Dr. Willits also noted "[p]persistent pain and limitation of motion in back, right hip, and left ankle." R.527. Valdez described this pain as "severe," rating it an eight out of ten. *See* R.525. More importantly, Dr. Willits

8

referred explicitly to the range of motion chart, an objective evaluation showing Valdez's significantly limited range of motion in his lumbar spine. R.527, 530 (showing back extension of zero degrees, where twenty-five degrees is normal, and back flexion of thirty degrees, where ninety degrees is normal). The chart also comports with Valdez's right hip limitations, which are milder than those in his back. *See* R.530 (normal hip abduction, but only five degrees of lateral flexion on the right side, where twenty-five degrees is normal). Once accurately portrayed, these specific findings support Dr. Willits's conclusion, in the functional capacity assessment, that Valdez has limited range of motion in his lower spine. *See* R.527.

Compounding the problem, the ALJ inaccurately described Dr. Willits's functional capacity assessment. The functional capacity assessment does not mention right hip limitations, so it cannot conflict with Dr. Willits's notes finding a "mild limitation of motion particularly of inversion of the right hip." *Compare* R.526, *with* R.527. More importantly, the ALJ selectively quoted the assessment's description of Valdez's lumbar spine limitations. According to the ALJ, that record states that Valdez "is unable to extend his back and cannot flex the back fully." R.27. But the ALJ leaves out the rest of that sentence, which actually states that Valdez "cannot flex the back fully *without significant pain.*" R.527 (emphasis added). That omission is consequential because the ALJ inaccurately characterizes Dr. Willits's opinion as a complete

9

moratorium on bending. *See* R.27 (Dr. Willits "indicates [Valdez cannot] extend or flex his back").

Moreover, Valdez is correct that the ALJ conflated flexion (bending forward) and extension (bending backward), and that this error tainted the ALJ's comparison of Dr. Willits's findings with other medical opinions. *See* Dkt. 11 at 6. According to the ALJ, "Dr. Willits is the only examiner to indicate [Valdez] cannot bend *forward*." R.27 (emphasis added). But Dr. Willits found that Valdez is "unable to extend" his back—i.e., bend *backward*. *See* R.527. Indeed, Dr. Willits's range of motion chart reflects that Valdez can bend forward about thirty degrees. *See* R.530. The ALJ's supportability analysis of Dr. Willits's opinion was not based on substantial evidence.

As for consistency, the flawed characterization of Dr. Willits's opinion undermined the ALJ's comparison of those findings to other medical evidence. Dr. Willits's position, when accurately portrayed, comports with that of the state agency consultants, who similarly noted Valdez's bending limitations due to pain. *See* R.93-94 (1A) (Dr. Pacl, limiting Valdez to occasional bending and finding "inverrions [sic] of rt hip" and limitation of l-spine"); R.103-04 (4A) (Dr. Rowley, finding limitations in the "l-spine" range of motion and determining the medical evidence of record supports Valdez's claims of back and hip pain).

Comparisons to other record evidence evince similar flaws in the ALJ's reasoning and explanation. For example, Valdez rightly disputes the ALJ's

reliance on Valdez's past work as a donut shop cashier to undermine Dr. Willits's opinions. *See* Dkt. 11 at 8; R.27-28. As the ALJ noted, Valdez served donuts and ran the register for two years. R.27-28. But just a few sentences later, the ALJ determined that Valdez could not perform his past relevant work of cashier and laborer. R.28. Valdez's prior position does not reflect that he had fewer limitations than those described in Dr. Willits's assessment.

The ALJ also did not identify other medical evidence that conflicts with Dr. Willits's opinion. Specifically, the ALJ highlighted radiology reports from x-rays that Dr. Willits himself requested. *See* R.27 (citing R.528-29). Those x-rays showed "no acute bony abnormality" of the ankle and "mild degenerative changes with moderate similar findings on the right hip." R.528-29. But Dr. Willits's functional capacity assessment did not discuss bone abnormalities or right hip limitations. *See* R.525-30. In fact, the ALJ found the x-rays were consistent with the state agency consultants' opinions. R.27. And Dr. Willits's ankle and right hip findings do not differ materially from the state agency consultants' opinions. *Compare* R.526-27, *with* R.94, 104.

The ALJ did not adequately evaluate the consistency or supportability of Dr. Willits's medical opinion. Thus, the ALJ erred in finding Dr. Willits's opinion unpersuasive.

### B. The error was not prejudicial because substantial evidence supports the RFC.

Although the ALJ erred in finding Dr. Willits's medical opinion unpersuasive, remand is not appropriate unless Valdez shows that the error was prejudicial. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Valdez argues that the ALJ's erroneous evaluation of Dr. Willits's opinion created an inaccurate RFC, which affected the VE's testimony about the positions Valdez could hold and ultimately led the ALJ to determine that he is not disabled. Dkt. 11 at 10. The Court disagrees.

Valdez asserts only one point of error: that the RFC limitation to occasional stooping contradicts Dr. Willits's opinion and is unsupported by the state agency consultants' findings.[2] *See generally* Dkt. 11. This contention invokes the principle that an RFC determination may be erroneous when wholly unsupported by any medical opinion. *See Williams v. Astrue*, 355 F.

---

[2] Valdez also argues that the RFC lifting and carrying limitation of "ten pounds occasionally" is unsupported by the state agency consultants, who set the lifting limitation at twenty pounds occasionally. *See* Dkt. 11 at 4-5; R.25 (RFC); R.92 (Dr. Pacl); R.103 (Dr. Rowley). But there can be no prejudice when the RFC is more restrictive—*i.e.* more favorable to Valdez—than that assessed by the state agency consultants. *See Rodriguez v. Kijakazi*, 2023 WL 5808388, at *11 (W.D. Tex. Aug. 22, 2023), *adopted by* 2023 WL 5814389 (W.D. Tex. Sept. 7, 2023).

12

App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) ("[W]ithout opinions from medical experts ... [an ALJ] may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"). But that does not mean, as Valdez asserts, that prejudice exists whenever an ALJ "fails to reference any medical opinion" as a basis for the RFC. *See* Dkt. 11 at 9. ALJs are not required to "adopt a specific physician's assessment" if other substantial evidence supports the RFC. *See Miller v. Kijakazi*, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam); *see also* 20 C.F.R. § 404.1520c(a) (the ALJ does not defer to any medical opinions); *West v. Kijakazi*, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022) (even though the ALJ found every medical opinion unpersuasive, remand was not appropriate because "substantial medical and psychological evidence support[ed] the ALJ's conclusions"), *adopted by* 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022). Thus, even assuming the opinions of Drs. Willits, Pacl, and Rowley favored stricter limitations, there is no prejudicial error so long as substantial evidence supports the RFC.

Medical evidence supports the RFC's limitation to occasional stooping. "Stooping" means "bending at the waist." *See* R.93, 104. "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10 at *5 (S.S.A. 1983); *see also* Dkt. 11 at 5 (Valdez calculating "2.666 hours out of an eight hour day"). Contrary to Valdez's assertion, the state agency consultants'

13

opinions explicitly support the RFC limitation to occasional stooping. Valdez cites Dr. Rowley's opinion, which imposed a two-hour limit on "crawling, crouching, kneeling, stooping, balancing, climbing stairs and ramps," approximately 40 minutes less than "occasional." Dkt. 11 at 5 (citing R.104). But Dr. Rowley's limitation was secondary to left ankle pain, not the ability to bend. *See* R.104. And even assuming the 40-minute difference is consequential, Valdez misstates the state agency consultants' findings. On the page that Valdez cites, Dr. Rowley rated Valdez's stooping limitation as "[o]ccasionally." *Compare* Dkt. 11 at 5 (citing R.104), *with* R.104. Dr. Pacl did not impose a similar two-hour limit, but he likewise limited Valdez to "[o]ccasionally" stooping and bending. *See* R.93. Those medical opinions support the stooping limitation in the RFC.

Moreover, Valdez has not explained how his disability determination would have been altered if the RFC had imposed greater stooping limitations. Indeed, the RFC already limits Valdez to sedentary work. R.25. "By its very nature, work performed primarily in a seated position entails no significant stooping." SSR 83-10 at *5 (defining sedentary work).

The lack of prejudice is evident from the ALJ's findings about the jobs that someone with Valdez's RFC could perform. At step five, the ALJ identified five relevant jobs that exist in significant numbers in the national economy. R.29. Two of those jobs are classified as sedentary unskilled work, *i.e.* no

14

significant stooping. *See* R.29, 81. And the remaining three jobs, while classified as light unskilled work, all involve seated activities that comport with Valdez's RFC limitations. *See* R.79-80. Thus, even if the RFC prohibited stooping entirely, Valdez would still be capable of performing those jobs. The ALJ's decision is therefore affirmed.

## Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff Mario Valdez's Motion for Summary Judgment (Dkt. 11) and **GRANTS** Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 12). It is further **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on July 3, 2024 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge